No. 92-181

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

JOHN AND JANE DOE,

      Plaintiffs and Appellants,

-vs-

THE STATE OF MONTANA, acting through
its Department of Revenue,

      Defendant and Respondents.

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      James T. Ranney, Attorney at Law, Missoula, Montana

      For Respondent:

      Allen B. Chronister; Chronister, Driscoll & Moreen,
Helena, Montana

FILED

FEB 4 1993

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  July 30, 1992

Decided:  February 4, 1993

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

John and Jane Doe appeal from an order of the First Judicial District Court, Lewis and Clark County, dismissing their complaint for failure to state a claim under Rule 12(b)(6), M.R.Civ.P. We affirm.

The sole issue on appeal is whether the District Court erred in granting the defendant's motion to dismiss.

In 1989, the Department of Revenue investigated John and Jane Doe to determine whether they failed to report business income while on public assistance. Agents from the Department of Revenue obtained a warrant to search the Doe home for business and financial records and other evidence relating to the sale of insurance and dealing in firearms.

During the subsequent search, the agents entered the Does' bedroom closet. There, they found records relating to the sale of firearms. They also found a standard pharmacy photoprocessing envelope which appeared to contain photographs. The agents opened the envelope and examined the photographs. Several of the photographs depicted Jane Doe nude and the couple engaged in sexual activity. One photograph depicted the Does' children helping John Doe remove his boots. Doe was partially disrobed, with either his hand or penis visible.

The latter photograph caused the Department of Revenue agents to suspect child sexual abuse or child pornography; they summoned Missoula police officers. The police officers contacted the

Missoula County Attorney's office and were informed that the photographs did not warrant criminal prosecution. A Missoula officer notified Child Protective Services of the possible child abuse pursuant to § 41-3-201, MCA. Child Protective Services subsequently interviewed the Does' children at school. The interview revealed no indication of child abuse or pornography.

On August 2, 1991, John and Jane Doe filed a complaint for invasion of privacy. They alleged that the Department of Revenue agents exceeded the scope of the warrant when they opened and searched the envelope. On February 21, 1992, the District Court granted the defendant's motion to dismiss for failure to state a claim upon which relief can be granted. The Does appeal.

Did the District Court err in granting the defendant's motion to dismiss the complaint for failure to state a claim?

A district court's dismissal of a complaint for failure to state a claim is governed by well-established principles. A complaint should not be dismissed unless it appears that the plaintiff is entitled to no relief under any set of facts which could be proved in support of the claim. Furthermore, the district court must construe the complaint in the light most favorable to the plaintiff; all allegations of fact in the complaint are taken as true. Morgan v. City of Harlem (1987), 227 Mont. 435, 437, 739 P.2d 491, 492-93.

While the District Court discussed the "plain view" exception to the warrant requirement, it dismissed the Does' complaint based on its conclusion that the agents did not exceed the scope of the search warrant. The Does contend, first, that the search of the

3

photoprocessing envelope exceeded the scope of the warrant and, second, that two of the requirements necessary to invoke the "plain view" doctrine were not met. Finally, the Does argue that an allegation that three of their photographs were seized and not returned was not addressed by the District Court.

The District Court determined that the agents did not exceed the scope of the warrant when they examined the contents of the photoprocessing envelope, relying on United States v. Ross (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572. While the facts in Ross involve the scope of a search conducted under the automobile exception to the warrant requirement, the Supreme Court described therein the scope of a search conducted under a valid search warrant:

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.

Ross, 456 U.S. at 820-21.

Here, the agents conducted a search of the Does' residence pursuant to a warrant. The warrant authorized the agents to search the residence for business and financial documents. Under Ross, they were entitled to search every place in which business and financial documents or evidence might be found. The search led the agents to the bedroom closet, where they found documents and items relating to the Does' criminal activity. The photoprocessing envelope also was located in the closet. Given the warrant's focus

4

on documentation of suspected illegal activity, the envelope may have contained photographic evidence. Thus, under Ross, the envelope did not differ from the closet; it constituted merely another container in which evidence of the illegal activity might be found. Under these circumstances, the warrant was sufficiently broad to authorize the agents to open the envelope and review the photographs. We conclude that the examination of the contents of the envelope was within the scope of the warrant.

The Does contend that Justice Stewart's concurring opinion in Stanley v. Georgia (1969), 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542, is controlling precedent for their argument that the agents exceeded the scope of the warrant by examining the photographs individually. In Stanley, officers obtained a warrant to search a residence and to seize equipment, records and other material used in or derived from an illegal wagering business. In searching a desk drawer, they found film and proceeded to view it. On the basis of the contents of the film, the defendant was charged with, and convicted of, knowing possession of obscene material.

The Supreme Court reversed the conviction. Concurring in the result, Justice Stewart determined that the officers exceeded the authority of the warrant when they seized and viewed the film. He characterized the officers' conduct as a general, exploratory search which led to a seizure of an item not described in the warrant.

Stanley is neither controlling nor persuasive here. Initially, we note that the Stanley majority reversed the

5

conviction based on the First, rather than the Fourth, Amendment; Stanley held that "the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime." Stanley, 394 U.S. at 568. Concurring opinions do not constitute controlling precedent.

In addition, if Justice Stewart's concurring opinion is relevant at all, it supports the State's position that the agents acted within the scope of the warrant. Unlike the officers in Stanley, the agents in the present case did not conduct a general search that was unrelated to the purpose of the warrant; the photoprocessing envelope was found in the closet with other evidence of the Does' criminal activity. Moreover, in Stanley, the film could not reasonably have contained any of the items described in the warrant; here, the envelope may have contained photographic documentation relating to the illegal dealing in firearms of which the Does were suspected. The fact that it contained merely private photographs of a personal nature could not have been known to the agents in advance.

We hold that, under the circumstances of this case, the opening of the envelope and examination of the photographs did not exceed the scope of the warrant. Based on this holding, we need not address the "plain view" doctrine.

The Does' final argument is that an allegation that three of their photographs were seized and not returned was not addressed by the District Court. While not so stated, presumably the Does intend this argument to establish error by the District Court in

6

dismissing their complaint. The argument is flawed.

The thrust of the Does' complaint is a single invasion of privacy via the agents' initial intrusion into the photoprocessing envelope and review of individual photographs. The one sentence contained in the five-plus page complaint on which the Does apparently premise this final argument states that they discovered, after the search, that three photographs were missing. The sentence is not a factual allegation that any person or entity against whom the complaint is brought actually seized the photographs. This is insufficient to put the defendants or the District Court on notice that they were alleging a specific seizure by one or more named defendants. Moreover, in their brief in opposition to the motion to dismiss before the District Court, the Does stated:

> [T]he crux of our complaint is an allegation of a single invasion of privacy via the initial illegal intrusion into the Plaintiffs' personal packet of photographs, with the subsequent actions all being primarily relevant to the issue of damages. . . .

Under these circumstances, the cited sentence in the Does' complaint does not constitute an independent basis for their claim of invasion of privacy. The District Court did not err in dismissing the complaint.

Affirmed.

Justice

We concur:

Chief Justice

7

_John Conway Harrison_

_P. C. McDonough_

_[signature]_

_____
Justices

Justice William E. Hunt, Sr., dissenting.

I dissent. There is nothing more basic to the subject of privacy than the nude body. "The desire to shield one's unclothed figure from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and dignity." York v. Story (9th Cir. 1963), 324 F.2d 450, 455, *cert. denied*, 376 U.S. 939 (1964).

In my opinion, Justice Stewart's concurring opinion in Stanley is especially applicable to the facts of this case. In this case, as in Stanley, the Department of Revenue agents were acting under the authority of the warrant when they opened the closet door. However, they exceeded that authority when they found and seized the photographs. In no way did the warrant indicate that photographs were to be searched. The agents rummaged through the photographs for a considerable amount of time, even though the nature of the photography should have been readily apparent. The agents conducted an exploratory search which exceeded the bounds of the warrant and invaded the privacy of the Does.

A week after the search, in the presence of a local newspaper reporter, police officers openly discussed and joked about the photographs. In addition, an official from Child Protective Services told the children's grade school principal of the alleged abuse in order to elicit his permission to interview the children. The Does have been embarrassed and humiliated, and their reputation tarnished, if not ruined.

9

I would reverse the District Court and allow the case to proceed on the merits.

_____
                          Justice

Justice Terry N. Trieweiler concurs in the foregoing dissent.

_____
                          Justice

10